## In re LIEBERGELD et al.
### Patent Appeal No. 3110.

Court of Customs and Patent Appeals.
April 24, 1933.

Brown & Critchlow, of Pittsburgh, Pa. (Paul N. Critchlow, Jo. Baily Brown, and Jesse R. Langley, all of Pittsburgh, Pa., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There is here before us, upon appeal from the decision of the Board of Appeals of the

United States Patent Office, affirming the decision of the examiner, one claim of an application for patent on alleged "improvements in Process for the production of seamless tubes according to the hot extrusion process by means of mechanically driven presses."

The original application, serial 80338, was filed in the United States Patent Office on January 9, 1926. It is stated in the brief for appellants that: "The application as originally filed * * * placed emphasis on the performance of the extruding operation by means of a *mechanical* press (as distinguished from the *hydraulic* presses which had theretofore been used in hot extrusion) and on the fact that the press rams of mechanical presses operated at *higher speeds* than the press rams of hydraulic presses * * *." (Italics quoted.)

The application was amended, first, on March 4, 1927, and the amended specification recited that: "The *most important* feature as regards mechanical presses resides, however, therein that their pressing stamps can be moved with a *much higher speed* than those used in connection with hydraulic presses for manufacturing brass tubes by the extruding method." (Italics ours.)

A second amendment to the application was made October 29, 1930, in which it was stated, among other things: "We have discovered that the obstacle to extruding tubes from metals such as iron is overcome by increasing the speed of extruding the billet to that which is given by known mechanical presses as distinguished from a hydraulic press, the plunger speed of a mechanical press (operated by a crank, eccentric or the like) being in excess of an average of *three inches per second* * * *." (Italics ours.)

By a further amendment of December 9, 1930, appellants introduced into their application the claim (No. 73) in issue here, which reads as follows: "73. The method of producing a seamless tube from a heated billet of ferrous or ferrous base metal, comprising applying endwise pressure to the billet while in a container and thereby extruding the metal of the billet in seamless tube form from the container at an average speed in excess of three inches of billet length per second, the tube emerging from the container through a die in the direction of the application of pressure to the billet."

The claim seems clear enough to explain itself without any particular analysis of it. It will be noted that it is limited to "a heated billet of ferrous or ferrous base metal" and

calls for extrusion "at an average speed in excess of three inches of billet length per second." The last-quoted clause is the one upon which appellants principally rely for allowance of the claim.

Another claim (No. 74) referring to "semi-hard and hard metals," and not containing any statement as to the rate of speed of extrusion, stands allowed. The record does not disclose the reasons for the allowance of this claim and we are not here concerned with it.

Claim 73, supra, was rejected by both tribunals of the Patent Office upon two grounds, viz.:

First, that the disclosures of the application as originally filed made no reference to a speed "in excess of three inches of billet length per second," not, indeed, to any specific rate of speed. It was, therefore, held that the amendment presented new matter not justified by the disclosure of the application as first filed.

Second, that the claim is not patentable over the prior art as shown in the following references:

Remmen, 927,076, July 6, 1909.

Astfalck, 1,049,641, January 7, 1913.

Towne, 1,468,092, September 18, 1923.

Oehmig, Jr., et al., 1,664,990, April 3, 1928.

The first ground of rejection presents a question of law. It is an interesting one upon which there is much authority to be found both in standard text-books on patent law and in well-considered decisions of the Patent Office tribunals and of various courts.

■ In our view of this case, however, it is not essential that we here make an adjudication of that issue, although it was quite in order for the tribunals of the Patent Office to pass upon it, since it is proper in all cases for them to recite all grounds of rejection, to the end that, in the event of an appeal for court review, all questions may be here brought under scrutiny.

■ We find ourselves in agreement with the rejection of the claim upon the prior art. In reaching this conclusion we have given no particular weight to the references Towne and Oehmig, both of which seem to relate, as is pointed out in the brief for appellants, to the extrusion of soft, cold metals. The Board of Appeals listed those but took no special note of them, nor do they specifically refer to Astfalck's patent (other than to list it), cited by the examiner, for "hydraulic

press for making tubes out of an ingot." They do say, generally, that all the references are deemed pertinent, but the one principally relied upon by them is Remmen.

This patent relates to "apparatus for making metal articles by pressure through dies," and, in the specification, it is said, " * * * by forcing *heated* steel or iron billets, blooms or ingots through a die." (Italics ours.)

At another point in the specification it is said: "While the apparatus has been described more particularly for the manufacture of wire, rods, bars, rails, billets, blooms, etc., it can be used for manufacturing articles of various kinds, such, for instance, as seamless tubes, in which case it is merely necessary to arrange in line with the opening in the die a mandrel or core against which the hot metal is forced when it is discharged."

Speaking of Remmen, the board says: "A hydraulic press is employed."

The board then states that such a press "can obviously be operated at a speed of 3 inches per second or over if desired"; that there is nothing in the patent to prevent such operation; that there is no reason why the metal cannot be extruded at the rate desired if a fluid under a sufficiently high pressure be employed; that it would seem apparent that the press should be operated at a sufficient speed to overcome any trouble caused by the metal cooling on account of being extruded too slowly; and that it is believed obvious to substitute a mechanical press if it operates at a higher speed.

The brief for appellant states: "The press employed by Remmen is the ordinary *hydraulic* press which has always been used in hot extrusion work." (Italics quoted.)

It is then argued that slow speed characterizes the use of hydraulic presses; that this is well known to those skilled in the art, the state of which must be taken into account in considering the question of invention; and that the board's statements above quoted, or paraphrased, are *"assumptions* without evidence to support them" (italics quoted), and are contrary to affidavit and publication evidence filed in the record.

Upon the question of Remmen employing a "hydraulic" press, it seems proper to say that, while this may be true as a matter of practice, we do not interpret the teaching of his patent to be limited to hydraulic presses, even if that be regarded as important.

The specification, among other things, says: "Generally stated, the invention comprises a suitable cylinder in which the heated metal is placed * * * together with *power mechanism,* such as a hydraulic cylinder, for forcing the metal out of the cylinder and through the die * * *." (Italics ours.)

The phrase, "such as a hydraulic cylinder," as used, apparently illustrates, or names, one form of power mechanism, but does not limit the application to that form, whatever the actual practice in the art may have been.

Each of Remmen's claims has the introductory phrase, in the "apparatus of the character specified," and, in enumerating the features of the combination, the majority of them makes no mention of hydraulic means as constituting the power mechanism required.

It might also be pointed out that there is nothing in appellant's claim 73 which limits the performance of their method to a "mechanical" press. In so far as the claim is concerned, the "endwise pressure" may be applied to the billet by any means—hydraulic, mechanical, or other—if there be any other.

The affidavits and publications made part of the record have been quite carefully read and studied, and due note has been taken of the argument relative to appellants being the first to produce seamless tubes of certain kinds of iron and steel by the hot extrusion process. Whatever the truth may be as to this, the fact remains that at least one prior patent taught the art of producing metal tubes in that way, and disclosed an apparatus in which the *method* necessarily followed seems clearly to anticipate the *method* of appellants here involved. True, that reference does not teach any specific rate of pressure speed, such as appears in the claim at issue, but we are unable to agree with the contention of appellants that the findings of the Board of Appeals, already alluded to and stated, are, as appellants contend, mere "assumptions." They seem to us to be logical and reasonable deductions as to operations in the art which appellants are practicing and as such they support the holdings of nonpatentability.

The decision of the Board of Appeals is affirmed.

Affirmed.