49 CCPA

**Application of Neal A. PENNINGTON.**
**Patent Appeal No. 6777.**

United States Court of Customs
and Patent Appeals.
May 18, 1962.

Eric Y. Munson, New York City, Albert W. Rinehart, Lowry & Rinehart, Washington, D. C. (Oliver S. Titcomb and Curtis, Morris & Safford, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Associate Judges,

and Judge WILLIAM H. KIRKPAT-RICK.*

SMITH, Judge.

█ The Board of Appeals affirmed the examiner's rejection of claim 33 of appellant's application for patent Serial No. 473,509, filed December 7, 1954, for improvements in a "COMBINED HUMIDIFIER-DEHUMIDIFIER." The rejection, based on 35 U.S.C. § 103, is that the claimed invention would have been obvious to one of ordinary skill in view of the references which are:

Newton et al. 2,200,243 May 14, 1940
Farr 2,286,480 June 16, 1942

The single claim on appeal reads as follows:

"33. A humidity changer for air conditioning, comprising; two air passages; means for impelling air through each of said passages; a moisture transferrer comprising a packing composed of corrugated sheets of non-metallic fibrous material, impregnated with a non-volatile hygroscopic substance, a structure for supporting said packing to position the corrugations to extend through the transferrer in the direction of air-flow, thereby dividing the packing into mutually-supporting small passageways having common partition-walls extending through the transferrer, and being open at both ends to allow the flow of air therethrough; means for moving said transferrer cyclically across said passages; and heating means in one of said passages to regenerate the transferrer."

The sole issue is whether the board was correct in holding that:

"Given the Newton et al and Farr patents, we consider it would be obvious to workers in the art to increase the contact area in the Newton et al wheel by making it of corrugated sheeting as taught by Farr while still using hygroscopic material as desired by Newton et al for its moisture absorbing function. Impregnating the material with any known non-volatile hygroscopic substance to increase its hygroscopic property involves only skill and is not a patentable expedient."

Appellant's invention is a humidity exchanger for conditioning air by transferring moisture from one stream of air to another. In the embodiment shown in the drawing and described in the specification, the moisture transferrer removes moisture from an air stream in one passage and transfers it to an air stream in another passage. For example, a stream of air to be dehumidified, such as air entering a building, passes through one passage where the moisture transferrer absorbs moisture from the air. The other stream of air, such as air being exhausted from the building, passes through another passage where it removes the previously absorbed moisture from the moisture transferrer.

Appellant's "moisture transferrer," in one embodiment, is a wheel carrying hygroscopic or moisture absorbing material. This wheel revolves on an axis parallel to both air streams and intersects the streams so that the air flows axially through part of it. The air streams are located on opposite sides of the axis of rotation. The hygroscopic material has a greater affinity for water vapor than the air to be dehumidified so that moisture from such air is taken up by the transferrer. The other stream of air is heated to a temperature at which it has a greater affinity for water vapor than the hygroscopic material so that the latter loses moisture to the air in such stream. Stated another way, the stream of air to be dehumidified has a much higher relative humidity than the second stream of air. Moisture flows from the air to be dehumidified to the moisture transferrer and then from the latter to the heated air in the second stream.

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

Each portion of the moisture transferrer is moved continuously in a closed circuit through the separate streams of air successively to first remove moisture from the air to be dehumidified and then transfer it to the other stream of air and so on.

The humidity changer as thus far described is, as admitted by appellant, similar to the disclosure in the patent to Newton et al. Applicant's improvement as defined in claim 33 is directed to a new combination of elements including an improved packing for the moisture transferrer "composed of corrugated sheets of a non-metallic fibrous material," one form of which is disclosed as "corrugated asbestos paper or the like" impregnated with "some appropriate solution of a hygroscopic liquid or salt." The packing is supported to position the corrugations in the cylinder so as to extend axially through the transferrer in the direction of air flow, thus dividing the packing into mutually supporting small passageways having common partition walls extending through the transferrer. The small passageways are open at both ends to allow the air of the separate streams to flow therethrough.

Appellant asserts that claim 33 covers a humidity changer which is distinguished from the references either singly or combined:

" * * * by defining among other elements in a humidity changer, a moisture transferrer comprising *a packing composed of corrugated sheets of non-metallic fibrous material, impregnated with a non-volatile hygroscopic substance,* a structure for supporting said packing to position the corrugations to extend through the transferrer in the direction of air flow, thereby dividing the packing into mutually-supporting small passageways having common partition walls extending through the transferrer, and being open at both ends to permit the free flow of air therethrough." [Emphasis added.]

While the claimed structure may possess advantages over the prior art structures, it does not, in our opinion, claim a structure which would have been unobvious to one of ordinary skill in the art. 35 U.S.C. § 103.

It is clear that the identical structure of claim 33 is not disclosed in the prior patents to Newton et al. and Farr, since neither one discloses a packing of thin sheets of non-metallic fibrous material impregnated with a hygroscopic substance. However, the patent to Newton et al., discloses dehumidifying means for an air conditioning system comprising a freely rotatable dehumidifying wheel having its upper portion extending into and across an upper air passage and its lower portion extending into and across a drying and reactivating chamber. The Newton et al. dehumidifying wheel is formed of "a suitable hygroscopic material" for absorbing moisture from air and is provided with axially extending passageways for air to flow through the wheel. Fresh air and return air from a room are drawn through the upper air passage by a fan and flow through the passageways in the dehumidifying wheel where moisture in the air is absorbed. As the dehumidifying wheel rotates, portions thereof which have absorbed moisture pass out of the upper air passage into the lower drying and reactivating chamber where air, heated by a heating element, is blown through the passageways in the wheel to drive off absorbed moisture.

The Farr patent discloses an "AIR PURIFIER OR CONDITIONER" comprising a wheel-like purifier element continuously wetted with water and mounted to rotate in a duct through which air to be purified and humidified is drawn by a fan. The wheel-like purifier element comprises a corrugated web and a flat web of "preferably wire mesh of fine gauge" wrapped spirally around a drum to form from the corrugations a large number of air channels or passages inclined to the direction of air flow. Such construction provides an "extraordinarily large superficial area" for contact

with the air to remove impurities and add moisture thereto.

Farr, in discussing the material from which the body of the wheel is constructed states in the specification, that:

"* * * This body 6 is so formed that it presents a multiplicity of air passages or channels through which the air passes in passing through the flue."

The principal advantage claimed by appellant is the use of corrugated sheets of non-metallic fibrous material positioned on a support with the corrugations extending in the direction of air flow to divide the packing into small, open-ended air passageways having common partition walls, thus providing a larger surface area per unit of volume for contact with air and a larger cross-sectional area for the flow of air than Newton et al. would provide. It is evident that claim 33 actually distinguishes over Newton et al. in requiring a greater number of air passageways, and hence, a greater area for contact with air than Newton et al. would appear to provide.

The idea of using sheet material which has been corrugated and wound into a roll on a support to form a large number of air passages, and thus, to provide a very large area for contact with air, seems to us expressly taught by Farr. That teaching, the examiner and the board held, would suggest to workers in the art of air conditioning the idea of using corrugated sheet material to increase the number of air passageways, and, thus, the contact area, in the moisture transferrer of Newton et al.

Appellant challenges the holdings of the examiner and of the board as to what the Farr patent would teach to one of ordinary skill in this art, and states:

"The Farr patent does not disclose a humidity changer. The Farr patent could not be used as a humidity changer for absorbing moisture from a stream of air. The patentee Farr states that the web of wire mesh (R. 80, col. 1, lines 10 and 14)—can be soldered which,

it is submitted, constitutes a disclosure that the wire mesh is metallic and would transmit heat from one portion of the wheel to the other and thereby defeat the purpose of a moisture transferrer of the kind defined in appellant's Claim 33. Furthermore, the perforate reticulated wire mesh body of the Farr patent would permit moisture to flow through the openings from one side of the wheel or body to the other and thereby prevent any absorption of moisture at one side of the wheel."

We think that appellant's argument ignores the express teaching of Farr that a large number of air passageways and a very large contact area can be provided by using corrugated material wound into a roll. Clearly, that teaching is not dependent upon the use of metallic sheets, nor is it dependent upon whether the device functions to remove impurities from the air or to transfer moisture to the air. Where a large number of air passageways for transferring large amounts of moisture is contemplated, one of ordinary skill in the art could be expected to look to expedients, such as Farr teaches, for providing that result. Moreover, in seeking to increase the capacity for transferring moisture both to and from the air, one skilled in this art would, it is believed, turn naturally to the art of transferring moisture *to*, as well as to the art of transferring moisture *from*, an air stream.

Appellant has directed our attention to the limitation in claim 33 that the sheets are formed of a "non-metallic fibrous material." Newton et al. disclose the use of a "suitable hygroscopic material." As a teaching to one of ordinary skill in this art, the examiner and the board suggested that this would include both blotter paper or common cardboard as "hygroscopic materials." In objecting to this suggestion, appellant contends that such suggestion is contrary to the affidavit of Dr. Robert S. Taylor. Appellant argues that the affidavit shows, on the basis of affiant's knowledge of air conditioning systems at the time when

the Newton et al. patent application was filed that silica gel, which cannot be made into corrugated sheets, was used in the moisture transferrer of Newton et al. Whatever might have been the hygroscopic material used in the art in actual practice, Newton et al. disclose nothing to limit their "suitable hygroscopic material" to the materials then used in actual practice, or to any particular material.

This court, in considering a similar contention raised in In re Liebergeld et al., 64 F.2d 541, 20 CCPA 1031, refused to interpret the express teaching of *"power mechanism,* such as a hydraulic cylinder," in a reference patent as being limited to a hydraulic cylinder, which, the appellants urged, was shown by an affidavit of record to be the power mechanism used in actual practice. The court there held that whatever may have been the actual practice, the language, "such as a hydraulic cylinder," in the patent merely pointed to one form of power mechanism and did not limit the patent to that form. Similarly here, whatever may have been the actual practice is not determinative of what Newton et al. actually teach.

 What would constitute a "suitable hygroscopic material" as disclosed by Newton et al. would obviously depend upon factors such as the desired contact area. Where a large contact area is desired, it would be obvious, as taught by Farr, to use corrugated sheets. Selection of a fibrous, non-metallic material capable of being impregnated with a hygroscopic substance is well within the skill of the art. That blotter paper and common cardboard are fibrous, non-metallic, and absorbent, and hence, are capable of being so impregnated, is a matter of common knowledge. Such materials clearly meet the limitation of claim 33 to "non-metallic fibrous material." [1] Impregnating the fibrous material seems to us, as it was held by the board, to be an obvious expedient known to one of ordinary skill in this art for increasing hygroscopicity.

Appellant argues that the problems involved in the Newton et al. and Farr patents are entirely different, and, therefore, under the asserted authority of In re Pennington, 241 F.2d 750, 44 CCPA 789, those patents have been improperly combined. We agree with the board's disposition of that argument. It pointed out that Newton et al. and Farr involve the same problem of providing a large area of contact between air passageways in a moisture transferrer and the air, and the same ultimate problem of transferring moisture to air.

For the foregoing reasons, we affirm the decision of the Board of Appeals.

Affirmed.

MARTIN, Judge, sat but did not participate in decision.

---

[1]. The affidavit describes appellant's apparatus as a "transfer wheel made of *corrugated paper sheets* impregnated with an absorbent * * *" [Emphasis added.]